UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
DEREK JOSEY,                                                  :   07 CV 647 (ARR)
                                                              :
                                  Petitioner,                 :   NOT FOR ELECTRONIC
                                                              :   OR PRINT
                                                              :   PUBLICATION
     -against-                                                :
                                                              :
SUPERINTENDENT THOMAS POOLE,                                  :   OPINION
                                                              :   AND ORDER
                                  Respondent.                 :
                                                              :
------------------------------------------------------------- X

ROSS, United States District Judge:

Derek Josey, proceeding pro se, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 9, 2007. After Justice Barry Kron of the New York State Supreme Court for Queens County determined that the petitioner had forfeited his right to counsel, the petitioner represented himself at trial, with a court-appointed attorney serving as a legal advisor. The petitioner was convicted of assault in the second degree, N.Y. Penal L. § 120.05(3), and escape in the first degree, N.Y. Penal L. § 205.15(2), see Trial Tr. at 555, and sentenced, as a persistent felony offender, to concurrent prison terms of twenty-five years to life on each count. See Sentencing Tr. at 29-30. His conviction was affirmed by the Appellate Division, Second Department, and leave to appeal was denied by the New York Court of Appeals. See Exs. E, H to Steward Decl.. The petitioner is currently incarcerated at the Attica Correctional Facility in Attica, New York.

The petitioner contends that the trial court erred by not holding a hearing into his mental competency before determining that he had forfeited his right to counsel and allowing him to

1

represent himself at trial. In the instant petition, he claims that his appellate counsel provided ineffective assistance by failing to raise this line of argument on direct appeal. For the reasons that follow, the petition is denied.

## BACKGROUND

On November 25, 1998, the petitioner was originally arrested on drug-related charges and taken into police custody. See Pet. ¶ 2; Trial Tr. at 266. According to trial testimony, while in custody the petitioner dug into an old wound on his stomach, causing it to bleed. Id. at 268. The petitioner was taken to the emergency room at Queens General Hospital, see id. at 296, 302, where he was handcuffed to his bed rail. Id. 3 at 03, 305. On a trip to the bathroom, Police Officer Craig Adelman removed his handcuffs and escorted him to the bathroom. Id. at 305-306. Officer Adelman testified that while he and the petitioner were walking back into the emergency room, the petitioner "suddenly hit me in the right side of the face" and then "he threw [an] EKG machine down on my leg," and "proceeded to run towards the door." Id. at 306. The petitioner then ran from the hospital, ran across the street into the backyard of a house and over a fence, at which point Officer Adelman lost sight of him. Id. at 307. The police were unable to locate him in the ensuing search. Tr. at 308. Several months later, the petitioner was apprehended and charged with assault and escape. See Pet. ¶ 6.

Through the course of his pre-trial proceedings, the petitioner was represented by seven different court-appointed attorneys. Pet. ¶ 8. On June 11, 2001, the day his trial was scheduled to begin, the petitioner refused to appear in court and his then-assigned attorney, Kevin O'Donnell, informed the court that the petitioner did not want O'Donnell to represent him and

2

the petitioner is "not coming out until he's appointed a new attorney." Trial Tr. at 2.

The trial judge noted that the petitioner's case was sent to him "with a decision from Judge Griffin in which he noted that a hearing should be held to make a determination as to whether Mr. Josey had forfeited his right to counsel." Id. at 3-4. Before evaluating whether the petitioner had forfeited his right to counsel, the trial judge evaluated whether the petitioner was competent to stand trial. The trial judge read from reports prepared by two doctors who evaluated the petitioner's mental competency pursuant to N.Y. Crim. Proc. L. § 730. He first quoted from the report prepared by Dr. Robin Kerner:

> Defendant is able to explore his legal situation in a reasonable manner. He understands the charges against him and is well versed in the court process. When asked why he has had so many attorneys, defendant replied that he wants to find an attorney that will really work for him. Apparently this is a strategy that has proved successful in the past.
> In dealing with a prior case defendant went through numerous attorneys and managed to find one who negotiated an excellent offer for him.

Id. at 3; see Pet., App. 166-68. He also quoted from the report of Dr. Jill Bowen, who noted:

> While defendant understood that others may find his frequent changing of attorneys as unusual, the strategy worked for him in the past. He notes that on a prior case it took him two and a half years and ten lawyers to achieve a result that he could accept.
> Defendant is also aware he's facing a third felony conviction and appreciates the seriousness of this. He's, therefore, not in any particular rush to resolve this case.

Id. at 3; see Pet., App. 169-70.

The trial judge then noted on the record that the petitioner refused to appear at the hearing, making it impossible for the petitioner to waive his right to counsel. Id. at 5. He thus

3

continued with an evaluation of whether the petitioner had nonetheless forfeited his right to counsel, calling five of the petitioner's former court-appointed attorneys to testify. Ron Nir testified that he had represented the petitioner beginning in March 2000, but that in July 2000, the petitioner indicated "that he did not feel that I was representing him to the best of my ability" and that "he did not feel that I was acting in his best interest." Id. at 6-7. Nir further testified that the petitioner had threatened him and his family, Id. at 7, specifically that "upon his release from prison . . . he would come find me, physically attack me, and physically attack my wife and children." Id. at 8. After these threats, Nir asked to be relieved from representing the petitioner.

Nichola Satriano testified that he represented the petitioner from July 2000 through October 2000, that he had productive conversations with the petitioner and filed omnibus motions on his behalf. Like Nir, Satriano eventually asked to be relieved of his representation after his working relationship with the petitioner "really began to deteriorate," culminating in threats to Satriano and his family. Id. at 11-13.

Mitchel Miller, who represented the petitioner between Nir and Satrianoa, also reported abusive threats from the petitioner. Miller testified that shortly after commencing his representation, he began receiving phone messages from a voice he recognized as that of the petitioner. Id. at 16. Miller reported that the "sum and substance" of these calls was "you stupid mother fucker, you're not helping me. Where the fuck are you?" Id. These messages were left "at all sorts of hours of the day and night." Id. One particularly threatening message prompted Miller to withdraw from his representation of the petitioner. Specifically, Miller testified:

> Finally, he left a lengthy message with comments on his research into

4

my departure from the District Attorney three years previously. And he told me in sum and substance that my office was too close to the hood to be fuckin' with the lives of nigers. And that some nigers may fuck with my life the same way I was fucking with him. That is virtually a direct quote.

Id. at 16.

Neither of the other attorneys who testified reported any threats from the petitioner. His first attorney, Nathaniel Welkes, represented the petitioner only briefly and only recalls having a "disagreement" before ultimately being relieved. Id. at 9-10. Louis Meehan, who represented the petitioner from October 1999 until February 2000, testified that although he had "no recollection of any threatening manner," he "was very loud and boisterous" in the holding area. Id. 19. Meehan was relieved after "it became apparent that there was no workable attorney/client relationship between myself and Mr. Josey." Id. at 18-19.

Based on the testimony from these five attorneys, the trial court found that the petitioner "by acting in a manipulatively threatening and abusive manner to a number of his attorneys has forfeited his right to counsel in this case." Id. at 20. The trial court recounted the petitioner's criminal history and noted that he is "somebody who knows and plays the system consistently." Id. at 21. He also quoted additional portions of the petitioner's November 2000 competency exam, "Defendant presents as alert and oriented in all spheres. Defendant proceeded to relate a coherent personal history. Defendant does not display any signs of serious psychiatric illness. His thinking is generally relevant, coherent and goal directed. Defendant is able to explore his legal situation in a reasonable manner." Id. at 21. The trial judge continued reading from the competency exam, quoting the second doctor who reported that the petitioner "was clearly very

5

invested in his legal case, knew the charges and understood his legal options. Defendant has known exactly what he has been doing all along. He has chosen to try to manipulate the system to make it so unbearable dealing with him that somehow these pending felony charges would disappear. . . ." at Id.

The trial judge then reiterated his conclusion that the petitioner had forfeited his right to counsel and indicated that Kevin O'Donnell would remain in the courtroom during the trial as the petitioner's legal advisor. Id. at 22-23. The trial judge asked for the petitioner to be brought back to the courtroom, but the petitioner, after unsuccessfully requesting to speak with the judge off the record, refused. Id. at 23-24.

The trial judge then held a Sandoval hearing to determine whether the petitioner's criminal history could be admitted, see People v. Sandoval, 34 N.Y.2d 371 (1974), without the petitioner present. Id. at 24-28.

When the case was re-called, the petitioner appeared in court, and the trial judge notified him that he had forfeited his right to counsel. Id. at 30. Despite this forfeiture, the trial judge told the petitioner that O'Donnell was still willing to represent him, and that O'Donnell would remain in the courtroom as a legal advisor if the petitioner insisted on representing himself. Id. at 30-32. The trial judge also advised the petitioner on the risks involved in representing himself. Id. at 31-32. However, the petitioner insisted on representing himself. Id. at 32-33.

After a lengthy exchange, which included the petitioner stating that he wanted O'Donnell dead, see id. at 34, and making several apparent references to a medical or psychiatric condition, see id. at 35, 37, 38, the petitioner agreed to conduct himself civilly in the courtroom, see id. at

6

41, and the trial judge agreed to allow the trial to proceed with the petitioner representing himself.

Before jury selection, the trial judge explained his previous Sandoval ruling, id. at 53-54, and then reevaluated his Sandoval determination with the petitioner present, making one change to the previous ruling. Id. at 55-57. During jury selection, the petitioner sought O'Donnell's assistance, which O'Donnel provided with an officer seated between the two of them for safety. Id. at 147-53.

The petitioner proceeded to represent himself at trial, and the jury found him guilty of both counts: assault in the second degree and escape in the first degree. Id. at 555. The petitioner was later sentenced, as a persistent felony offender, to concurrent terms of 25 years to life for each charge. Sentencing Tr. at 29-30.

On direct appeal, the petitioner's appellate counsel argued that the petitioner was denied the right to be present during his full Sandoval hearing and the evidence was insufficient to establish that Officer Adelman suffered physical injury. See Ex. A to Steward Decl. In addition, the petitioner filed a supplemental brief, pro se, in which he argued that his sentence as a persistent felony offender violated the constitutional rule established by the Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000). See Ex. C to Steward Decl. The Appellate Division affirmed the conviction, concluding that the petitioner had forfeited his right to be present at the Sandoval hearing and that the petitioner's other arguments were unpreserved for appellate review. See Ex. E to Steward Decl. The Court of Appeals denied leave to appeal. See Ex. H to Steward Decl.

The petitioner's appellate counsel then filed a motion pursuant to N.Y. Crim. Proc. L. § 440.20 to vacate the petitioner's sentence as a persistent felony offender. This motion was denied, see Ex. K to Steward Decl., and the Appellate Division denied leave to appeal. See Ex. N to Steward Decl.

The petitioner, now proceeding pro se, then filed a writ of error coram nobis claiming ineffective assistance of appellate counsel. See Ex. O to Steward Decl. The petitioner faulted appellate counsel for having "failed to identify or raise the facts that Defendant was denied counsel during the trial without benefit of a competency hearing when the trial judge had sufficient information to recognize Defendant was mentally incapable of self-representation, and when Defendant had a life-time history of mental illness." See id. ¶ 1. The petitioner noted that, in representing himself, he "made several mistake [sic] during the trial that reflect his lack of legal acumen and that actually harmed his defense before the jury," including "allowing a juror to sit on the panel who was a police Lt. and had stated on the record that he could not be fair or impartial in a case such as Defendant's where a police officer was physically harmed." Id. ¶ 13. He stated that he notified his appellate counsel of these issues, but his appellate counsel did not raise them. Id. ¶¶ 20-21. He argued that this "failure of appellate counsel to research, raise or even recognize that Defendant was never found competent to defend himself nor was an up-dated CPL 730 examination conducted, and failure to brief any of the United States Constitutional issues, totally aborted Defendant's rights at trial and on direct appeal." Id. ¶ 23.

The Appellate Division denied his coram nobis petition, concluding that he had "failed to establish that he was denied the effective assistance of appellate counsel." See Ex. S to Steward

Decl. (citing Jones v. Barnes, 463 U.S. 745 (1983); People v. Stultz, 2 N.Y.3d 277 (2004)). The Court of Appeals denied leave to appeal. Ex. U to Steward Decl.

In the instant petition, the petitioner claims that appellate counsel provided ineffective assistance by failing to argue on direct appeal that the trial judge erred by determining the petitioner had forfeited his right to counsel and by allowing him to represent himself at trial without holding a new hearing into his mental competency. Pet. ¶¶ 29-35.

## DISCUSSION

### A. AEDPA Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. The statutory language "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court

9

confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that, although "[s]ome increment of incorrectness beyond error is required[,] . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted).

This deferential standard of review applies only when the federal claim has been "adjudicated on the merits" by the state court. Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001). If there is no such adjudication, the deferential standard does not apply; courts "apply the pre-AEDPA standards and review de novo the state court disposition of the petitioner's federal constitutional claims." Id. (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001)).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan v. Kuhlman, 261 F.3d 303, 313 (2d Cir. 2001) (quoting Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999)). A "conclusive presumption" that the state court decision "rest[s] on the merits of the federal claim" applies to decisions "fairly appearing to rest primarily on federal law or to be interwoven with federal law . . . [a]bsent a clear and express statement of

reliance on a state procedural bar." Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006).

An application for a writ of habeas corpus on behalf of a person in State custody cannot be granted unless "the applicant has exhausted the remedies available in the courts of the State, or . . . there is an absence of available State corrective process; or . . . circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b). To exhaust a claim, a petitioner must present to the state court "both the factual and legal premises of the claim he asserts in federal court," Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), and must give the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citing Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam) and O'Sullivan, 526 U.S. at 845).

### B. Ineffective Assistance of Appellate Counsel

In order to demonstrate ineffective assistance of counsel, a petitioner must satisfy the two-pronged test established in Strickland v. Washington, 466 U.S. 668 (1984). This test applies equally to claims of ineffective assistance of appellate counsel. See Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (citing Evitts v. Lucey, 469 U.S. 387, 396-97 (1985)). Under Strickland, a petitioner must demonstrate, first, that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 698.

In the appellate counsel context, a habeas petitioner may establish constitutionally deficient assistance if he shows that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000). However, "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a] [p]etitioner [i]s entitled." Aparicio, 269 F.3d at 99 (internal quotation marks and citations omitted). Finally, even if an attorney's performance were objectively unreasonable and unprofessional, the petitioner must still prove prejudice. That is, the petitioner must show "'a reasonable probability' that, but for the deficiency, 'the result of the proceeding would have been different.'" Aparicio, 269 F.3d at 95 (quoting Strickland, 466 U.S. at 694). Thus, to satisfy the second prong of the Strickland test in the appellate context, the petitioner must establish that "there was a reasonable probability that [his] claim would have been successful before the [state's highest court]." Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994), cert. denied, 531 U.S. 820 (1984).

In the instant case, the petitioner's claim fails both prongs of the Strickland test. Beginning with the second prong, the petitioner cannot establish that this claim would have been successful if it had been raised. The Sixth Amendment "safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process." Iowa v. Tovar, 541 U.S. 77, 80-81 (2004) (citations omitted). However, a criminal defendant may forfeit his Sixth Amendment right to counsel through serious misconduct. See Gilchrist v. O'Keefe, 260

F.3d 87, 95-97 (2d Cir. 2001) (citing Illinois v. Allen, 397 U.S. 337 (1970); Taylor v. United States, 414 U.S. 17 (1973)). Specifically, a defendant can forfeit his right to counsel through a "pattern of verbal abuse, threats, and unjustified refusals to cooperate" with court-appointed attorneys. Allen v. McGinnis, No. 05-CV-2699 (NGG), 2006 WL 1982871, at *7-8 (E.D.N.Y. July 13, 2006);[1] see also United States v. Thompson, 335 F.3d 782, 785 (8th Cir. 2003) (defendant's threat to kill his previously appointed counsel forfeited his right to have new counsel appointed); United States v. McLeod, 53 F.3d 322, 325-26 (11th Cir. 1995) (verbally abusive and threatening defendant forfeited his right to counsel). The petitioner's repeated threats to at least three of his court-appointed attorneys, as well as his general refusal to cooperate with any of his seven court-appointed attorneys, see Trial Tr. at 6-21, provided sufficient evidence for the trial judge to conclude that he had forfeited his right to counsel.

In addition, the trial judge properly concluded that the petitioner was competent to stand trial. Although there may be a "competency limitation on the self-representation right," Indiana v. Edwards, ___ U.S. ___, 128 S.Ct. 2379, 2386 (2008), the trial judge was not required to conduct a hearing into the petitioner's mental competency during the forfeiture-of-counsel hearing. See Allen v. McGinnis, 2006 WL 1982871, at *9 ("Forfeiture of counsel requires no finding of competence beyond the defendant's general competence to stand trial.") (citations omitted). The trial record indicates that the petitioner was, in fact, competent to stand trial. A criminal defendant must have "a rational as well as factual understanding of the proceedings

---

[1] A copy of this unpublished opinion shall be sent to the pro se petitioner along with a copy of this opinion. See Local Rule 7.1(c); Lebron v. Sanders, --- F.3d ----, 2009 WL 399215 (2009).

against him." Dusky v. United States, 362 U.S. 402, 402 (1960). In this case, the trial judge relied on the competency examination conducted in November 2000, in which two doctors concluded that the petitioner understood the charges against him and possessed the capacity to participate in his legal proceedings but chose to try to manipulate the system by refusing to cooperate with counsel. See Trial Tr. at 3, 21. The petitioner has not identified anything that transpired during the pre-trial or trial proceedings that should have prompted the trial judge to reevaluate the petitioner's competency.

Given the petitioner's abusive behavior toward and unwillingness to cooperate with a series of court-appointed attorneys, the trial court concluded that the petitioner had forfeited his right to counsel. These facts, along with a showing that the petitioner was competent to stand trial, were sufficient for the trial judge to allow the petitioner to represent himself at trial. The petitioner has not shown that arguing otherwise on appeal would have been successful, as required by the second prong of the Strickland test.

Furthermore, analyzing the first prong of the Strickland test, the petitioner has not shown that the issues that his appellate counsel chose to raise on direct appear were significantly weaker than the issue the petitioner urges should have been raised. Specifically, appellate counsel argued that the petitioner was denied the right to be present during his full Sandoval hearing and that the evidence was insufficient to establish that Officer Adelman suffered physical injury. See Ex. A to Steward Decl. Although these arguments proved unsuccessful, the petitioner has not shown that they were weaker than the arguments the petitioner contends should have been raised.

The petitioner has not established that the state court's denial of his petition for a writ of

14

error coram nobis alleging ineffective assistance of appellate counsel was contrary to, or involved an unreasonable application of, clearly established federal law. The petition is denied.

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus. No certificate of appealability is granted with respect to any of the petitioner's claims, since the petitioner failed to make a substantial showing of any denial of his constitutional rights. The petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253.

The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

/S/
_____
Allyne R. Ross
United States District Judge

Dated:    April 3, 2009
             Brooklyn, New York

<u>SERVICE LIST</u>

**_Pro Se_ Petitioner:**
Derek Josey
# 01-A-5108
Attica Correctional Facility
P.O. Box 149
Attica, NY 14011-0149

**Respondent's Attorneys:**
Chelsea Helene Chaffee
Priscilla Steward
State of New York, Office of the Attorney General
120 Broadway
New York, NY 10271